United States District Court
Southern District of Texas
**ENTERED**
March 24, 2016
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **RIGOBERTO MUNOZ-VARGAS,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. B: 14-48** |
| | § | **Criminal No. 11-966-1** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On March 24, 2014, Petitioner Rigoberto Munoz-Vargas ("Munoz-Vargas") filed a Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255. Dkt. No. 1.  On May 23, 2014, the United States timely responded to the motion. Dkt. No. 21.

After reviewing the record and the relevant case law, the Court **RECOMMENDS** that Munoz-Vargas's petition be **DENIED**, because it is legally and substantively meritless.

## I.  Procedural and Factual Background

On November 7, 2011, a federal grand jury – sitting in Brownsville, Texas – returned an eleven count indictment against Munoz-Vargas.  Included in the indictment were six counts of possession with intent to distribute marihuana; one count of possession with intent to distribute cocaine; one count of conspiracy to import marihuana; one count of conspiracy to import cocaine; one count of conspiracy to possess with the intent to distribute marihuana; and one count of conspiracy to possess with the intent to distribute cocaine. U.S. v. Munoz-Vargas, Criminal No. 1:11-966-1, Dkt. No. 1 (J. Hanen, presiding) (hereinafter "CR").

On December 6, 2011, the grand jury issued a superceding indictment, which added three more counts: (12) conspiracy to possess with the intent to distribute more than fifty grams of methamphetamine, in violation of 21 U.S.C. §§ 841 and 846; (13) possession with intent to distribute more than fifty grams of methamphetamine, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2; and (14) illegal possession of a firearm by an alien, in violation of 8 U.S.C. § 922 and 924. CR Dkt. No. 19.  The counts at issue in this petition are counts 13 and 14, to which he ultimately pled guilty.

### A.  Rearraignment and Waiver of Appellate Rights

On January 31, 2012, Munoz-Vargas appeared before the District Judge and pled guilty to count 13 – possession with intent to distribute more than fifty grams of methamphetamine – and count 14 – illegal possession of a firearm by an alien – pursuant to a written plea agreement. CR Dkt. Nos. 57, 122.  Counts one through twelve were to be dismissed pursuant to the plea agreement. Id.

At the re-arraignment, the Court accepted the guilty plea as to count 13, but declined to accept it as to count 14.[1] CR Dkt. No. 122, pp. 19-22.  Munoz-Vargas was unwilling to admit that the firearm traveled in interstate commerce, saying "I don't know anything about that." Id, p. 18.

As to count 13, the Court established that Munoz-Vargas had never needed treatment for any kind of substance abuse problem; was not under the influence of any medications or drugs; had discussed the charges with his attorney; was able to assist in his own defense; and was satisfied with his attorney's representation. CR Dkt. No. 122  Munoz-Vargas informed the Court that he had not been forced to plead guilty and acknowledged that the plea agreement had been explained to him. Id. The Court further informed Munoz-Vargas that the Court did not have to follow any recommendation within the plea agreement; and that the Court could sentence Munoz-Vargas to something more than Munoz-Vargas might anticipate. Id.  Munoz-Vargas stated that he had been informed of the possible sentences that he faced; and the impact of the sentencing guidelines in his case. Id.  The Court further explained that as a result of pleading guilty, Munoz-Vargas gave up the right to confront and cross-examine adverse witnesses; the right to call witnesses on his own behalf; subpoena witnesses to make them testify; and gave up his right to choose whether he would testify. Id. Munoz-Vargas confirmed that he understood the implications of giving up his right to trial

---

[1] That plea agreement contained a waiver of appellate rights, but because the plea was accepted only as to Count 13, that waiver only applied to the guilty plea as to that count. Nevertheless, as discussed later, Munoz Vargas ultimately withdrew from this plea agreement, leaving the guilty plea in place, but without the waiver of appellate rights regarding this count.

as a result of pleading guilty. <u>Id</u>.  Having stated that he understood all of his rights, Munoz-Vargas entered a plea of guilty to the charge of possession with intent to distribute more than fifty grams of methamphetamine. <u>Id</u>.

On February 2, 2012, Munoz-Vargas entered into a supplemental plea agreement as to count 14. CR Dkt. Nos. 59, 123.  In that supplemental plea agreement, Munoz-Vargas again waived his right to appeal and/or collaterally attack his conviction or sentence as to count 14. CR Dkt. No. 59, p. 5.  On that same day, a plea inquiry regarding count 14 was conducted by the Court.  During that hearing, the Court made the same inquiries that it had made as to count 13 and Munoz-Vargas gave responses that were similar to the ones he had given as to count 13. CR Dkt. No. 123.  The Court accepted Munoz-Vargas's plea of guilty as to count 14. CR Dkt. No. 123.  This, however, turned out to not be the end of the plea process.

### B.  Sentencing

In the final presentence report, Munoz-Vargas was assessed a base offense level of 38, based on a relevant conduct finding that Munoz-Vargas was accountable for the equivalent[2] of 32,830.5 kilograms of marihuana.[3] CR Dkt. No. 68, pp.19-20.  Munoz-Vargas was assessed an additional two level enhancement for the use of a dangerous firearm in the commission of the offense. <u>Id</u>.  He also received another two level enhancement for maintaining a premises for manufacturing or distributing the drugs. <u>Id</u>.  Munoz-Vargas was also assessed a two level enhancement for being directly involved in the importation of a controlled substance. <u>Id</u>.  Lastly, he received a three-level enhancement for being a manager/supervisor of the criminal activity. <u>Id</u>, pp. 20-21.

Munoz-Vargas received a three-level reduction for acceptance of responsibility. <u>Id</u>. Thus, Munoz-Vargas was assessed a total offense level of 44. <u>Id</u>.  The guidelines state that

---

[2]  For purposes of sentencing. multiple controlled substances are converted into their guideline equivalent for marijuana. U.S.S.G. § 2D1.1(c)(1).

[3] The PSR used count 13 – the drug offense – in calculating the guideline sentence because it was the count "resulting in the highest offense level" of the multiple counts that Munoz-Vargas pled guilty to. CR Dkt. No. 68, p. 20 (citing U.S.S.G. § 3D1.3(a)).

any offense level of more than 43 is to be treated as an offense level of 43, so 43 became his guideline level. Id, p. 29.

Regarding his criminal history, Munoz-Vargas had one prior criminal conviction, which resulted in zero criminal history points. CR Dkt. No. 68, pp.21-22. With no criminal history points, Munoz-Vargas was assessed a criminal history category of I. Id. Based upon a total offense level of 43 and a criminal history category of I, Munoz-Vargas's guideline sentencing range was life imprisonment. Id, pp. 28-29.

On April 2, 2012, Munoz-Vargas, through his appointed counsel, filed objections to the PSR. CR Dkt. No. 65. As relevant here, Munoz-Vargas objected to the base offense level; arguing that it should have been 36 instead of 38, predicated upon the amount of drugs he should have been held responsible for. Id. He also objected to the sentencing enhancements: for the use of a firearm; for maintaining the premises for drug activity; for importing the drugs; and for being a manager/supervisor of the criminal activity. Id.

On October 13, 2012, Munoz-Vargas, through his appointed counsel, moved to withdraw from the plea agreement as to count 13, the methamphetamine drug count. CR Dkt. No. 112. The motion stated that "[a]t the time of the plea, [Munoz-Vargas] did not realize that the relevant conduct in the presentence report would have such a severe impact as to cause the recommendation of a life sentence." Id. Munoz Vargas did not seek to withdraw from the supplemental plea agreement as to count 14, the gun charge.

On November 6, 2012, the District Court held the sentencing hearing. The Court overruled all of Munoz-Vargas's objections to the PSR. CR Dkt. No. 124. Upon a motion from Munoz-Vargas, the Court allowed him to withdraw from the plea agreement as to Count 13. Id, p. 23. The guilty plea to count 13 – as well as the guilty plea to count 14 and the supplemental plea agreement covering count 14 – remained intact. Id, pp. 23-24.

Munoz-Vargas's counsel moved for a downward departure in the sentence, arguing that his client had immediately debriefed with agents upon his arrest and that his truthful answers led to his elevated relevant conduct findings in the PSR. CR Dkt. No. 124, pp. 26-27. That motion was denied. Id.

As to count 13, the District Court sentenced Munoz-Vargas to life imprisonment, to be followed by five years of supervised release, without supervision. Dkt. No. 124, p. 30. As to count 14, Munoz-Vargas was sentenced to 24 months of incarceration, to be served concurrently with count 13, followed by one year of unsupervised release, also to be served concurrently. Id. The judgment was entered on January 4, 2013. CR Dkt. No. 127.

**C. Direct Appeal**

Munoz-Vargas filed a notice of appeal. CR Dkt. No. 115.

On February 29, 2013, Munoz-Vargas's appointed appellate counsel filed a brief asserting that the District Court incorrectly calculated the base offense level at 38 and that the sentencing enhancements were improperly assessed. U.S. v. Munoz-Vargas, Case No. 12-41237 (5th Cir. 2012).

On January 9, 2014, the Fifth Circuit upheld the life sentence, affirming the District Court. CR Dkt. No. 140.[4]

Neither the Fifth Circuit docket nor the Supreme Court docket reflect the filing of a petition for certiorari.

**D. Motion to Vacate, Set Aside or Correct Sentence Pursuant to § 2255**

On March 24, 2014, Munoz-Vargas timely filed the instant § 2255 motion, requesting that the District Court vacate, set aside, or correct his sentence. Dkt. No. 1. Munoz-Vargas raised the following seven claims:

(1) after he was permitted to withdraw from his plea agreement as to count 13, his guilty plea should have been automatically converted to a plea of not guilty and that the resulting sentence is "plain error;"

(2) trial counsel was ineffective for failing to object to the plain error set forth in the first claim;

(3) appellate counsel was ineffective for failing to raise the issue in the first claim on direct appeal;

---

[4] On February 4, 2016, Munoz-Vargas, through his appellate counsel, filed a motion for a reduction in sentence based on a retroactive application of the Sentencing Guidelines. CR Dkt. No. 202. The motion was granted and Munoz-Vargas's sentence for the drug conviction was reduced to 405 months. CR Dkt. No. 203.

(4) trial counsel was ineffective for failing to object to the sentencing enhancement for use of a firearm on double jeopardy grounds;

(5) his guilty plea was not knowing and intelligent because "no rational person would knowingly plead to a life sentence without [assurances] that in doing [so] he would be secure in the knowledge that he would not receive such a sentence;"

(6) trial counsel failed to object to the misconduct alleged in the PSR, which was based upon information provided by Munoz-Vargas to the Government during debriefings that were protected by proffer agreement;

(7) the drug amount attributed to him in the PSR was "incorrectly calculated." Dkt. Nos. 1, 2.

On March 24, 2014, the Court ordered the United States to respond to the petition. Dkt. No. 5.

On April 1, 2014, the United States filed a motion to compel Munoz-Vargas's trial and appellate counsels to file a sworn affidavit responding to the petition. Dkt. No. 8.  On that same date, the Court granted the motion. Dkt. No. 9.

On April 28, 2014, Munoz-Vargas's trial counsel filed an affidavit, stating that Munoz-Vargas's petition was inconsistent with the facts of the case. Dkt. No. 20.

On April 29, 2014, Munoz-Vargas's appellate counsel filed an affidavit, also stating that Munoz-Vargas's petition was inconsistent with the facts of the case. CR Dkt. No. 145.

On May 23, 2014, the United States responded to the petition. Dkt. No. 21.  The Government seeks specific performance of the waiver of appellate rights in the supplemental plea agreement and, alternatively, seeks to have the claims denied as meritless. Id.

On June 20, 2014, Munoz-Vargas filed a reply. Dkt. No. 22.

## II.  Applicable Law

### A. Section 2255

Munoz-Vargas seeks relief pursuant to 28 U.S.C. § 2255. Dkt. No. 1.  As relevant here, that section provides:

(a)  A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States,

or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Where a § 2255 petitioner exhausts or waives his direct appeal, courts may presume that he was fairly convicted. U.S. v. Willis, 273 F.3d 592, 595 (5th Cir. 2001). Generally, a petitioner may not raise on collateral attack issues that he failed to raise on direct appeal, absent a showing of cause and prejudice. Id.

"In a habeas action, federal courts stand willing to review issues of jurisdiction, allegations of substantial constitutional violations, and claims that exceptional circumstances resulted in a fundamental miscarriage of justice." Lawrence v. McCarthy, 344 F.3d 467, 474 (5th Cir. 2003).

Nevertheless, as a general matter, an informed and voluntary waiver of post-conviction relief bars relief pursuant to 28 U.S.C. § 2255. U.S. v. Del Toro-Alejandre, 489 F.3d 721, 722 (5th Cir. 2007). Waiver will not preclude relief, however, if petitioner's waiver and guilty plea are the product of ineffective assistance of counsel. See U.S. v. White, 307 F.3d 336, 343 (5th Cir. 2002) (holding that an ineffective assistance of counsel claim may only challenge the assistance directly related to the effectiveness of the waiver).

**B. Ineffective Assistance of Counsel**

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984). U.S. v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004). To establish ineffective assistance, the petitioner must show: (1) that defense counsel's performance was deficient; and, (2) that the deficient performance prejudiced the defendant. Id. To prove that counsel's performance was deficient, petitioner must show that "it fell below an objective standard of reasonableness." U.S. v. Juarez, 672 F.3d 381, 385 (5th Cir. 2012). Courts will not "audit decisions that are within the bounds of professional prudence." U.S. v. Molina-Uribe, 429 F.3d 514, 518 (5th Cir. 2005).

Prejudice is established by proving "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694

Once a petitioner fails to prove one prong, it is not necessary to analyze the other one. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994).  A claim of ineffective assistance of counsel is properly made under § 2255, because it raises an issue of constitutional magnitude that cannot – as a general rule – be resolved on direct appeal. U.S. v. Bass, 310 F.3d 321, 325 (5th Cir. 2002).

As with counsel's performance at the trial level, "[c]laims for ineffective assistance of appellate counsel are governed by the two-part Strickland standard." Loden v. McCarty, 778 F.3d 484, 501 (5th Cir. 2015).

The relevant legal standards as to each of Munoz-Vargas's claims are addressed in the following sections examining those allegations.

## III. Analysis

A court may entertain and decide a § 2255 motion without requiring the production of the prisoner at a hearing. 28 U.S.C. § 2255.  Further, where the information available in the record and the clarity of the facts demonstrate a clear absence of entitlement to relief, a hearing is not required. U.S. v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992) ("A motion brought under § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief.").  The record in this case satisfies this requirement, for which reason the motion can be decided without a hearing.

In analyzing Munoz-Vargas's claims, a basic premise is that allegations by pro se litigants must be given liberal construction to ensure that their claims are not unfairly dismissed because of their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972).  Even applying that standard, neither the record – nor the law – support Munoz-Vargas's claims.

### A. Waiver of Appellate Rights

The Government has moved for specific performance of the waiver of appellate rights

contained in the supplemental plea agreement.  The Government is not entitled to such performance.

As to count 14 – the gun conviction – Munoz-Vargas waived his right to collaterally attack his conviction via a § 2255 petition. CR Dkt. No. 59, ¶ 11.  None of Munoz-Vargas's claims in this petition, however, attack the count 14 conviction or the sentence imposed as a result of that count, i.e. for illegal possession of a firearm by an alien.

Rather, Munoz-Vargas's current petition attacks only his conviction and sentence for count 13, the drug conviction.  Munoz-Vargas withdrew from his plea agreement as to this count and the Court permitted that withdrawal. CR Dkt. No. 124, p. 23.  As to count 13, for which Munoz-Vargas seeks relief, there is no waiver of his appellate rights, nor any waiver of his rights to attack this conviction or sentence.

The Government, when responding to Munoz-Vargas's direct appeal, appeared to recognize this fact because it did not seek specific performance of the plea agreement during those proceedings. See U.S. v. Munoz-Vargas, Case No. 12-41237 (5th Cir. 2013) (The first footnote of Government's brief, of May 1, 2013, noted that Munoz-Vargas "preserved his right to appeal the sentence" in the drug conviction).  The Government does not explain the change in its position from the direct appeal to this petition and the Court finds no obvious basis in the record to support it.

In sum, the waiver of appellate rights does not apply to the claims made in this case, which leaves the Court to examine the merits of Munoz-Vargas's claims.

**B. Withdrawal From Plea Agreement**

Munoz-Vargas argues that after he was permitted to withdraw from his plea agreement as to count 13, his guilty plea should have been automatically converted to a plea of not guilty and that the resulting sentence is "plain error." Dkt. Nos. 1-2.  This argument misapprehends the difference between a plea agreement and a guilty plea and should be denied.

When a defendant withdraws from a plea agreement, the guilty plea remains intact and the plea is not automatically changed to a not guilty plea. U.S. v. Lopez, 385 F.3d 245, 250-

52 (2d Cir. 2004) ("where a defendant seeks to withdraw from a [plea agreement] and consents to keeping his guilty plea intact, permission to withdraw from the plea agreement does not necessitate the entry of a new guilty plea.").

The Court ensured that Munoz-Vargas understood the distinction between the guilty plea and the plea agreement. For example, during Munoz-Vargas's re-arraignment – on the drug charge – the Court asked him, "I want to make sure you understand, Mr. Munoz, that I can follow that [plea] agreement, but I don't have to follow it. Do you understand that?" CR Dkt. No. 122, p. 9. Munoz-Vargas said he understood. The Court then stated that "I could accept your guilty plea here today, later on not allow you to withdraw it, and it's possible that I could sentence you to something more than you might anticipate. Do you understand that, sir?" Id. Munoz-Vargas responded in the affirmative. Id. Thus, at the time of re-arraignment, Munoz-Vargas understood there was a difference between the plea agreement and a guilty plea.

Moreover, when Munoz-Vargas moved to withdraw from the plea agreement, the motion explicitly stated that Munoz-Vargas "is not asking to withdraw his plea of guilty." CR Dkt. No. 112. At the sentencing hearing, Munoz-Vargas's counsel stated "And, Your Honor, there was another issue. I filed a motion to withdraw the plea agreement; not the plea, but the agreement." CR Dkt. No. 124, p. 4. At no point did Munoz-Vargas withdraw from – or even attempt to withdraw from – his plea of guilty to the drug charge. Rather, Munoz-Vargas withdrew from the plea agreement so that he could retain his right to appeal the sentence. Id, p. 23.

The record clearly shows that Munoz-Vargas was released from his plea agreement with the Government, but that his guilty plea remained intact. The effect of this was to transform Munoz-Vargas's guilty plea from one pursuant to a plea agreement into one without a plea agreement, i.e. a "cold" plea. Thus, his guilty plea was not – and should not have been – automatically converted to a plea of not guilty, because the guilty plea was never implicated by the withdrawal from the plea agreement.

The Court notes that even if Munoz-Vargas had wanted to withdraw his guilty plea,

10

he had "no absolute right to withdraw his guilty plea." <u>U.S. v. Conroy</u>, 567 F.3d 174, 177 (5th Cir.2009). Munoz-Vargas would have to show "a fair and just reason for requesting the withdrawal." FED.R.CRIM.P. 11(d)(2)(B). No such showing has been made, even allowing the latitude afforded a <u>pro se</u> petitioner.

Accordingly, this claim is meritless and should be denied.

### C. Ineffective Assistance of Counsel

Munoz-Vargas has asserted that both his trial and his appellate counsel were ineffective for failing to object to his sentence on the basis that his plea of guilty had been withdrawn.

As noted above, this claim is not borne out by the facts. The record clearly establishes that Munoz-Vargas withdrew from his plea agreement, but that his guilty plea to count 13 remained intact. Accordingly, neither his trial nor his appellate counsel were deficient for failing to raise a meritless objection. <u>See</u> <u>Koch v. Puckett</u>, 907 F.2d 524, 527 (5th Cir.1990) ("counsel is not required to make futile motions or objections."). The claims as to both trial and appellate counsel should be denied.

### D. Double Jeopardy

Munoz-Vargas avers that trial counsel was ineffective for failing to object to the sentencing enhancement for use of a firearm on double jeopardy grounds. Munoz-Vargas was assessed a two-level sentencing enhancement – in the sentence for the drug conviction – for the use of a firearm in the commission of the offense. CR Dkt. No. 68, pp. 19-20. Munoz-Vargas also pled guilty to the illegal possession of a firearm by an alien. Munoz-Vargas is asserting that his protections against double jeopardy were violated when he was punished twice for the use of the firearm. The law does not support such a challenge

"[The] use of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute punishment for that conduct." <u>Witte v. U.S.</u>, 515 U.S. 389, 399 (1995). Thus, the argument raised by Munoz-Vargas is foreclosed as a matter of law.

Given this effect, counsel was not ineffective for failing to make such an objection.

11

Koch, 907 F.2d at 527.  This claim is meritless and should be denied.

**E. Guilty Plea**

Munoz-Vargas asserts that his guilty plea was not knowing and intelligent because "no rational person would knowingly plead to a life sentence without [assurances] that in doing [so] he would be secure in the knowledge that he would not receive such a sentence." Dkt. No. 2.  Despite this argument, the record reflects that – upon withdrawing from the plea agreement as to count 13 – this is exactly what Munoz-Vargas did.  For that reason, this claim is meritless.

At his re-arraignment for the drug charge, Munoz-Vargas stated that he understood that the maximum sentence he faced was life imprisonment. CR Dkt. No. 122, p. 8.  Munoz-Vargas also stated that "we had an agreement," apparently referring to the plea agreement he had with the Government that he later withdrew from.[5] Id.  Munoz-Vargas, however, also stated that he understood that the Court was not bound to that plea agreement and could reject the Government's recommendations and sentence Munoz-Vargas "to something more than [he] might anticipate." CR Dkt. No. 122, p. 9.

"Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  By his own admission, Munoz-Vargas understood the maximum sentence he faced and that any agreement he had – at that time – with the Government would not prevent the Court from imposing the maximum sentence.  Despite his apparent argument to the contrary, there is no requirement that a defendant make the best choice; only that the choice was knowingly and voluntarily made. The record shows those are the facts in this case. This is sufficient and renders the claim meritless, for which reason, it should be denied.

---

[5]  Thus, to whatever extent the plea agreement would have protected Munoz-Vargas from a life sentence, his withdrawal from that agreement was also a withdrawal from the protections afforded by that agreement.

**F. Proffer Agreement**

Munoz-Vargas avers that trial counsel was ineffective for failing to object to the misconduct alleged in the PSR, which was purportedly based upon information provided by Munoz-Vargas to the Government during debriefings that were subject to a proffer agreement.  No factual showing has been made supporting this claim.

The Sentencing Guidelines provide that information provided as part of a proffer agreement will not be used against the Defendant.  There are express exceptions to this limitation on use of the information.  Those exceptions include: (1) if the government knew the information prior to the agreement; (2) it concerns prior convictions and sentences; (3) for a future perjury prosecution; (4) a breach of the cooperation agreement by the Defendant; or, (5) in determining the basis for a downward departure. U.S.S.G. § 1B1.8(a)-(b).

Munoz-Vargas has not stated what information from the proffer protected sessions was used in his PSR or how it was not within one of the exceptions found in U.S.S.G. § 1B1.8(b).  Instead, he has made a conclusory allegation with no evidentiary support.  This is not enough.

"Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition..., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." Ross v. Estelle, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (citing Woodard v. Beto, 447 F.2d 103 (5th Cir. 1971)).  In short, conclusory allegations are insufficient to raise a constitutional issue. U.S. v. Pineda, 988 F.2d 22, 23 (5th Cir. 1993).  Accordingly, this claim should be dismissed.

**G. Relevant Conduct**

Munoz-Vargas asserts that the relevant conduct attributed to him in the PSR, as it related to the drug quantities, was incorrectly calculated.  This claim is foreclosed and should be denied.

Munoz-Vargas made an identical argument on direct appeal and the Fifth Circuit found no error. CR Dkt. No. 140.  Thus, this claim has already been addressed and rejected by the Fifth Circuit and should not be re-litigated. U.S. v. Kalish, 780 F.2d 506, 508 (5th Cir.

13

1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions.").

Furthermore, this is a claim based upon an application of the Sentencing Guidelines. Such claims are not cognizable on collateral attack. U.S. v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999) ("Misapplications of the Sentencing Guidelines . . . are not cognizable in § 2255 motions."). This preclusion results from the fact that "[a] district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255." U.S. v. Segler, 37 F.3d 1131, 1133-34 (5th Cir. 1994). This claim should be denied.

## IV. Recommendation

WHEREFORE it is **RECOMMENDED** that Rigoberto Munoz-Vargas's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 1, should be **DENIED**.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2255 motion to the Fifth Circuit. 28 U.S.C. § 2253(a),(c)(1). A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006). A district court may sua sponte rule on a COA because the court that denies relief to a petitioner is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000).

After reviewing Munoz-Vargas's § 2255 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason. Although Munoz-Vargas's § 2255 motion raises issues that the Court has

carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Accordingly, it is **RECOMMENDED** that a COA should be denied.

### B.  Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009).  Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on March 24, 2016.

Ronald G. Morgan
United States Magistrate Judge